**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **HOLLAND, JR., ET AL.,** | ) | **CASE NO. 1:15 CV 121** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **FCA US LLC (FIAT CHRYSLER** | ) | |
| **AUTOMOBILES U.S., LLC (F/K/A** | ) | |
| **CHRYSLER GROUP, LLC))** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **Defendant.** | ) | |

On April 20, 2015, Defendant, FCA US LLC ("FCA"), filed a Motion for Summary Judgment (Docket #18) in the above captioned matter, asking the Court to grant summary judgment in its favor on all claims raised by Plaintiffs, Darrell Holland, Jr., John Dell, David Lockett, Brenda Bladwin, Anthony Soto, and James Morales, in their First Amended Class Action Complaint. On June 2, 2015, FCA filed a Motion to Transfer (Docket #24), asking the Court to transfer this mater to the United States District Court for the Southern District of New York, for referral to the Bankruptcy Court in that District. FCA argues transfer is appropriate because the claims made by Plaintiffs are dependent on, and inextricably intertwined with, a Sale Order entered in the case of *In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (Bankr. S.D.N.Y.) ("Sale Order"). Both Motions are fully briefed.

A status conference was held on June 25, 2015, during which the Parties indicated that

FCA's Motion to Dismiss, filed on April 20, 2015, (Docket #17) is moot.

**Factual and Procedural Background**

Plaintiffs in this case filed their First Amended Class Action Complaint against FCA on April 6, 2015. (Docket #10.) FCA was formed in the aftermath of the Chrysler Bankruptcy case and was formerly known as Chrysler Group LLC. The Bankruptcy Sale Order was effective June 10, 2009. (Complaint at Paragraph 18.) Plaintiffs are owners of 2004-2008 Chrysler Pacificas manufactured with Chrysler CS Platform engine cradles that are alleged to have prematurely rusted, corroded and/or perforated, creating a substantial risk of, or causing the engine to fall out of the vehicle. Plaintiffs allege various claims against under State law.

On October 23, 2010, FCA issued a Technical Service Bulletin ("TSB") concerning "Vehicle Vibration and/or Shake," alerting owners and mechanics to check the engine cradles and front suspension of certain 2004-2005 Chrysler Pacifica V6-3.5L VIN 4 vehicles for perforation and possible replacement. (Id. at 19.) The October 23, 2010 TSB indicated that this applied only to vehicles in the Canadian Market and in 19 U.S. salt belt states. (Id. at 20.) On November 9, 2010, FCA issued a letter expressly extending warranty coverage for 2004-2005 Chrysler Pacificas, indicating as follows:

> We are extending the warranty period on your front engine cradle because some vehicles operated in areas of high road salt usage may experience engine cradle corrosion resulting in driveability vibration and/or shake. If your vehicle is operating properly, there is nothing you are required to do. If you are experiencing the conditions described in this warranty extension within the 10 year or 150,000 mile period, simply contact your dealer to have repairs performed. Your dealer will inspect the engine cradle for perforation corrosion on the rear cross car cradle support and replace if necessary.

(Id. at 21.) 2004-2005 Pacifica owners who paid for engine cradle repairs out of pocket were

advised to send their original receipts, invoices and/or repair orders with proof of payment to Chrysler's Customer Assistance Center for reimbursement. (Id. at 22.)

On March 16, 2012, approximately a year and a half later, FCA issued a new TSB, expressly superseding the October 2010 TSB, stating that the engine cradle defect and extended warranty applied only to 2004-2005 Chrysler Pacificas in the salt belt states that were manufactured in a six-week window, from February 23, 2004 through March 31, 2004. (Id. at 23.) According to FCA, approximately 7,000 Pacifica vehicles were affected by the engine cradle defect, the root cause of which was a problem with the engine cradles' coating thickness. (Id. at 24.) However, Plaintiffs allege that throughout the United States, owners of over 322,000 Pacificas, model years 2004-2008, have been discovering that their vehicles' engine cradles are severely rusted and corroded, many to the point that their vehicles have been deemed unsafe to drive, and have been forced to either stop using their Pacificas of pay for repairs out of pocket, while others are currently driving their vehicles unaware of the alleged hazard. (Id. at 25-26.) Plaintiffs claim FCA is aware of the alleged defect and, that despite that knowledge, has fraudulently withheld information about the defect, fraudulently denied the existence of the defect and failed to adequately address the engine cradle defect. (Id. at 36.)

**FCA's Motion to Dismiss. (Docket #17.)**

On April 20, 2015, FCA filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. (Docket #17.) At the Status Conference held on June 26, 2015, the Parties indicated that said Motion is moot. (Docket #29.) However, the Motion is referenced by the Parties and the related briefing provides relevant information regarding the arguments of the Parties relative to FCA's Motion for Summary Judgment and Motion to Transfer. Therefore, the

-3-

Court will summarize the positions of the Parties stated therein.

FCA argues that it has no legal obligation to Plaintiffs, as FCA did not exist until 2009 and the Bankruptcy Sale Order bars certain claims against FCA for vehicles manufactured before June 10, 2009. FCA argues that it has never taken any action, or assumed any duty with respect to the vehicles Plaintiffs own and, therefore, that it is under no legal duty to pay for Plaintiffs' vehicle corrosion. FCA argues that one who performs a voluntary act has no legal obligation to do more than the duty undertaken; that a claim for beach of a voluntarily undertaken duty must allege physical injury; that a consumer cannot claim a warranty was created and extended to them by a vehicle manufacturer's issuance of a TSB to a dealership; and, that it has no post-sale duty to warn about defects in the product because FCA did not exist until 2009 and it did not manufacture or sell the vehicles and has no relationship with the product's owner.

On May 29, 2015, Plaintiffs filed their Response in Opposition, arguing that the First Amended Complaint carefully alleges duties that arose subsequent to the Bankruptcy Sale Order and alleges FCA had an independent duty to warn of and adequately address the engine cradle defect. Plaintiffs state that the TSBs issued by FCA confirm FCA's knowledge of the defect and that the latent defects at issue were not known or announced by FCA until after the Bankruptcy Sale Order, thereby removing it from the purview of the Sale Order under *Burton v. Chrysler Group, LLC* (*In re Old Carco LLC*), 492 B.R. 392, 395 (Bankr. S.D.N.Y. 2013)("[t]he Sale Order obviously does not bar claims concerning vehicles manufactured or sold by New Chrysler after the closing or injuries resulting from the breach of duties that arose under non-bankruptcy law after the closing."). Plaintiffs state that under *Burton*, FCA can be held liable under the theory of failure to warn of defects existing in older model year Chrysler vehicles

-4-

when it has actual knowledge of the defects. *Burton*, 492 B.R. at 405.

On June 8, 2015, FCA filed its Reply Brief. (Docket #25.) FCA asserts that Plaintiffs have never had any relationship with FCA giving rise to a legal obligation to act. Contrary to the analysis provided by Plaintiffs, FCA argues that *Burton* rejected successor liability and that the Sale Order bars any claims against FCA based on a breach of a duty that existed as of June 10, 2009 with respect to claims for economic damages arising out of vehicles that were manufactured and sold by Old Carco. FCA argues that it had no duty "under non-bankruptcy law" to warn of the alleged defect or pay to repair it.

**FCA's Motion for Summary Judgment. (Docket #18.)**

On April 20, 2015, FCA also filed a Motion for Summary Judgment. (Docket #18.) FCA asserts that it is entitled to summary judgment pursuant to Fed. R. Civ. P. 56(c) on all claims in Plaintiffs' First Amended Class Action Complaint. FCA argues that it is not legally obligated to pay for the repairs on Plaintiffs' cars because it never offered an extended warranty on their vehicles and that the mere fact that FCA voluntarily extended the warranty on certain vehicles does not create a legal obligation to do anything for Plaintiffs.

Plaintiffs filed their Response in Opposition on May 29, 2015. (Docket #23.) Plaintiffs argue that FCA mischaracterizes the claims alleged in the First Amended Complaint and ignores Plaintiffs' failure to warn claims. Plaintiffs assert that FCA had a duty to warn Pacifica owners upon learning of the latent safety defect and its attempts at doing to were inadequate. Further, Plaintiffs argue that the Motion for Summary Judgment is premature, as the Parties have barely begun formal discovery.

On June 8, 2015, FCA filed its Reply Brief. (Docket #26.) FCA reiterates that it has

never done anything for Plaintiffs or with respect to the Pacifica vehicles they own and, therefore, that they have no legal duty to act for Plaintiffs' benefit or warn Plaintiffs about the alleged rust-prone nature of their vehicles and pay for repairs. FCA argues that additional discovery is unnecessary because FCA has failed to present any evidence supporting a relationship between Plaintiffs and FCA.

**FCA's Motion to Transfer. (Docket #24.)**

On June 2, 2015, FCA filed its Motion to Transfer. (Docket #24.) FCA argues that the case should be transferred, pursuant to 28 U.S.C. § 1412, to the Southern District of New York, for referral to the Bankruptcy Court in that District, because the claims made by Plaintiffs are dependent on, and inextricably intertwined with, the *In re Old Carco LLC* Sale Order. The Bankruptcy Court retained jurisdiction to interpret and enforce the Sale Order and, citing *Ritter v. Chrysler Group LLC*, 2013 WL 7175621, *3 (M.D. Pa. 2013), FCA argues that transfer will serve the interests of justice and permit the Bankruptcy Court to interpret and enforce its Sale Order, thereby ensuring uniformity.

Plaintiffs filed the Response in Opposition on June 16, 2015, arguing transfer is unnecessary and that the decision of the Bankruptcy Court in *Burton* clearly explains that the law may impose a separate duty to warn on FCA. (Docket #27.) Although referencing "successor liability" several times, Plaintiffs expressly state that the question in this case is "whether FCA established a sufficient relationship with pre-Bankruptcy Pacifica owners such that State law imposed an independent duty to address the engine cradle defect." (Id. at p. 5.) Plaintiffs assert that this case does not present a novel question which would warrant transfer; that Plaintiffs have a Constitutional right to adjudicate their post-Bankruptcy claims; and, that

-6-

the Motion to Transfer otherwise fails to satisfy the requirements of Section 4112.

On June 23, 2015, FCA filed its Reply Brief. (Docket #28.) FCA argues that this case should be transferred to the Bankruptcy Court, assuming Plaintiffs' claims are premised on a theory of "successor liability" and, that otherwise, FCA is entitled to dismissal of, or summary judgment as to, Plaintiffs claims because Plaintiffs have failed to allege a legally cognizable theory under which FCA could be held liable.

**Consent Order**.

On August 3, 2015, Plaintiffs filed a Motion to Supplement the Record (Docket #30), apprising the Court of a Consent Order that FCA entered into with the National Highway Traffic Safety Administration ("NHTSA") on July 27, 2015, pursuant to which FCA was fined for mishandling certain vehicle recalls and was required to remedy certain defects and/or buyback certain vehicles. Although FCA attempts to correlate the details of the consent order with the facts as alleged in this case, there is nothing in the consent order with regard to the Chrysler Pacifica vehicles at issue in this case. It is interesting that the NHTSA ordered FCA to take specific action with regard to certain defective vehicles manufactured prior to the Sale Order. However, the Consent Order it not relevant to FCA's Motion for Summary Judgment and Motion to Transfer currently before the Court. Accordingly, the Motion to Supplement the Record (Docket #30) is DENIED at this time.

## Discussion

**I.     FCA's Motion to Transfer.**

28 U.S.C. § 1412 governs the transfer of proceedings "related to" a bankruptcy proceeding. *RFF Family Partnership, LP v. Wasserman*, Case No. 1:07 CV 1617, 2010 U.S.

Dist. LEXIS 57191 (N.D. Ohio January 29, 2010). Section 1412 provides that a motion to transfer may be granted "in the interest of justice or for the convenience of the parties." FCA asks the Court to transfer this case to the Bankruptcy Court in New York because it arises under, arises in, and is related to the Bankruptcy case of *In Re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (Bankr. S.D. N.Y.) and asserts that the interests of justice will best be served by a transfer. However, the Bankruptcy Court has already addressed the arguments raised by FCA in this case in the context of the Bankruptcy Case, finding such claims would not be barred by the Sale Order.

In *Burton v. Chrysler Group LLC*, 492 B.R. 392 (S.D.N.Y. 2013), the Bankruptcy Court stated as follows:

> Nevertheless, the law may impose a separate duty to warn on New Chrysler. Here, New Chrysler purchased Old Carco's assets. Succession alone does not impose a duty to warn a predecessor's customers of pre-existing defects, *Florom v. Elliott Mfg.*, 867 F.2d 570, 577 (10th Cir. 1989); *Travis v. Harris Corp.*, 565 F.2d 443, 448-49 (7th Cir. 1977), but the duty may arise where the successor (1) succeeds to the predecessor's service contracts that cover the particular machine, (2) actually services the machine, (3) is aware of the defect and (4) knows the location of the machine's owner. *Florom*, 867 F.2d at 577; *Polius v. Clark Equip. Co.*, 802 F.2d 75, 84 (3d Cir. 1986); *Travis*, 565 F.2d at 449; *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 451 N.E.2d 195, 199, 464 N.Y.S.2d 437 (N.Y. 1983); RESTATEMENT (THIRD) OF TORTS § 13 cmt. b (1998). In these circumstances, the law imposes a duty to warn because the successor has entered into a relationship with the customer and derives an actual or potential economic benefit. *Schumacher*, 451 N.E.2d at 199.

*Burton*, 492 B.R. at 405. The Court went on to state, with regard to vehicles manufactured prior to the Sale Order:

> [T]he Sale Order . . . did not prevent New Chrysler from voluntarily assuming obligations that it did not have, such as extending a lifetime warranty to repair or replace a defective fuel assembly. I do not opine on the scope of the duties that New Chrysler assumed when it issued the TSBs or the legal sufficiency of these claims under non-bankruptcy law except to note that they would not be barred by

-8-

the Sale Order.

*Id.* at 406.

Plaintiffs raise claims for failure to warn/failure to address defect; negligent misrepresentation and fraud. An important component of Plaintiffs' case is the fact that FCA issued TSBs regarding the rusting on the Chrysler Pacificas, first acknowledging there was an issue, and later limiting warranty coverage to only a small portion of vehicles. As explained in *Burton*, such claims are not barred by the Sale Order.

FCA's argument in support of transfer rests upon Plaintiffs' mixed use of the terms successor liability and independent duty. While Plaintiffs use the phrase "successor liability," Plaintiffs have expressly stated that the question in this case is "whether FCA established a sufficient relationship with pre-Bankruptcy Pacifica owners such that State law imposed an independent duty to address the engine cradle defect." (Opposition Brief , Docket #27-1, at p. 5.) Therefore, this case is not one that argues liability simply because FCA is a successor to Old Chrysler, but rather whether FCA had a duty to act based knowledge it acquired and actions it took post- Sale Order relative to the alleged rusting on the Pacificas at issue.

Accordingly, FCA's Motion to Transfer (Docket #24) is DENIED.

**II.  FCA's Motion for Summary Judgment.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A pre-discovery motion for summary judgment is premature, as granting summary judgment "'absent any opportunity for discovery' offends concepts of fundamental fairness." *Harris v. Jiangsu ASG Earth Envtl. Prot. Sci. & Tech. Co., Ltd.*, 2014 U.S. Dist. LEXIS 132154, at *6-7 (E.D. Ky. Sept. 18, 2014) (quoting *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. Ohio 1994). The Parties in this case have yet to conduct any meaningful discovery. Accordingly, the Motion for Summary Judgment filed by FCA (Docket # 18) is

hereby DENIED WITHOUT PREJUDICE.

## Conclusion

For the reasons stated above, FCA's Motion for Summary Judgment (Docket #18) is hereby DENIED WITHOUT PREJUDICE.  FCA's Motion to Transfer (Docket #24) is hereby DENIED.

FCA's Motion to Dismiss (Docket#17) is hereby DENIED AS MOOT, as indicated by the Parties during the June 26, 2015 status conference.

Plaintiffs' Motion to Supplement the Record (Docket #30) is hereby DENIED at this time.  Plaintiffs are not precluded from resubmitting the Consent Order as evidence in this case should it become relevant at a later stage in the proceedings.

IT IS SO ORDERED.

                                                        s/Donald C.Nugent
                                                        DONALD C. NUGENT
                                                        United States District Judge

DATED: September 3, 2015