## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **HOLLAND, JR., ET AL.,** | ) | **CASE NO.   1:15 CV 121** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **FCA US LLC (FIAT CHRYSLER** | ) | |
| **AUTOMOBILES U.S., LLC (F/K/A** | ) | |
| **CHRYSLER GROUP, LLC))** | ) | <u>**MEMORANDUM OPINION**</u> |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Judgment on the Pleadings filed by

Defendant, FCA US LLC ("FCA"), on September 17, 2015.  (Docket #39.)  FCA asks the Court

to grant judgment in its favor on all claims raised by Plaintiffs, Darrell Holland, Jr., John Dell,

David Lockett, Brenda Bladwin, Anthony Soto, and James Morales, in their First Amended

Class Action Complaint.

### Factual and Procedural Background

Plaintiffs in this case filed their First Amended Class Action Complaint against FCA on

April 6, 2015.  (Docket #10.)  FCA was formed in the aftermath of the Chrysler Bankruptcy case

and was formerly known as Chrysler Group LLC.  The Bankruptcy Sale Order was effective

June 10, 2009.  (Complaint at Paragraph 18.)  Plaintiffs are owners of 2004-2008 Chrysler

Pacificas manufactured with Chrysler CS Platform engine cradles that are alleged to have prematurely rusted, corroded and/or perforated, creating a substantial risk of, or causing the engine to fall out of the vehicle. Plaintiffs allege various claims against under State law.

On October 23, 2010, FCA issued a Technical Service Bulletin ("TSB") to dealerships concerning "Vehicle Vibration and/or Shake," indicating that the engine cradles and front suspension of certain 2004-2005 Chrysler Pacifica V6-3.5L VIN 4 vehicles should be checked for perforation and possible replacement. (Id. at 19.) The October 23, 2010 TSB indicated that this applied only to vehicles in the Canadian Market and in 19 U.S. salt belt states. (Id. at 20.) On November 9, 2010, FCA issued a letter to certain 2004-2005 Chrysler Pacifica owners, extending warranty coverage and indicating as follows:

> We are extending the warranty period on your front engine cradle because some vehicles operated in areas of high road salt usage may experience engine cradle corrosion resulting in driveability vibration and/or shake. If your vehicle is operating properly, there is nothing you are required to do. If you are experiencing the conditions described in this warranty extension within the 10 year or 150,000 mile period, simply contact your dealer to have repairs performed. Your dealer will inspect the engine cradle for perforation corrosion on the rear cross car cradle support and replace if necessary.

(Id. at 21.) 2004-2005 Pacifica owners who paid for engine cradle repairs out of pocket were advised to send their original receipts, invoices and/or repair orders with proof of payment to Chrysler's Customer Assistance Center for reimbursement. (Id. at 22.) Plaintiffs' vehicles were not included in the warranty extension and none of the Plaintiffs received a letter from FCA regarding the extended warranty.

On March 16, 2012, approximately a year and a half after issuing the first TSB, FCA issued a second TSB, explaining that the engine cradle defect and extended warranty applied

only to 2004-2005 Chrysler Pacificas in the salt belt states that were manufactured in a six-week window, from February 23, 2004 through March 31, 2004. (Id. at 23.) According to FCA, approximately 7,000 Pacifica vehicles were affected by the engine cradle defect, the root cause of which was a problem with the engine cradles' coating thickness. (Id. at 24.)

Each of the individually named Plaintiffs owns a Pacifica alleged to have an engine cradle defect and argues that FCA had a duty to warn them and pay for repairs to their vehicle. The facts as alleged with regard to the individually named Plaintiffs are as follows:

Holland: Holland purchased a used MY 2005 Chrysler Pacifica vehicle in October 2007. Id. at 7.) At a "recent inspection" he learned that "the engine cradle of his vehicle had rusted and corroded." (Id. at 48.) He paid "approximately $2,500" for a repair that "included the replacement of damaged bolts and bushings." (Id.)

Dell: Dell purchased a used MY 2005 Chrysler Pacifica vehicle in August 2011. (Id. at 8.) Three years later, in August, 2014, he was "alerted to the severe perforation of the[] vehicle's engine cradle" in the course of "a routine oil change." (Id. at 49.) FCA was notified of the defects in this product and the cost and repair. FCA denied Mr. Dell's claim for the reimbursement of his out of pocket repair costs which totaled approximately $1,400. At the time of repair, which required the replacement of other parts of the vehicle, Mr. Dell's Pacifica had 103,000 miles. (Id.)

Lockett: Lockett purchased a MY 2005 Chrysler Pacifica vehicle in August 2005. (Id. at 9.) He avers that he was "recently alerted to the Pacifica rust problem by a concerned friend" and after an inspection he "discovered that the sub-frame of the[] Pacifica is severely rusted." (Id. at 50.) Mr. Lockett is currently seeking estimates for the repair of his Pacifica, which has approximately 132,000 miles. (Id.)

Baldwin: Baldwin owns a MY 2004 Chrysler Pacifica vehicle. (Id. at 10.) Ms. Baldwin was recently advised that it would cost her approximately $5,000 to repair her Pacifica's engine cradle. Due to the severity of the rust surrounding her engine cradle, Ms. Baldwin alleges she will have to pay for additional repairs and/or replacements to her Pacifica's motor mounts, control arms, wheel alignment, sway bar, front struts and other parts. Ms. Baldwin's Pacifica currently has approximately 130,000 miles. (Id. at 51.)

Soto: Soto purchased a used MY 2004 Chrysler Pacifica in November 2010. (Id. at 11.)

Mr. Soto was alerted to the severe rust and cracks all throughout the sub frame rails and engine cradle of his Pacifica after having his vehicle serviced for a power steering leak. The mechanic who inspected Mr. Soto's Pacifica advised that the power steering issues were caused by the decrepit condition of the vehicle's sub frame. Currently, Mr. Soto's Pacifica has approximately 143,500 miles. (Id. at 52.)

Morales: Morales owns a MY 2005 Chrysler Pacifica vehicle. (Id. at 12.) After noticing that his vehicle was shaking excessively, Mr. Morales had his Pacifica inspected by a mechanic who noted that the chassis was severely rotted. Mr. Morales paid approximately $1,250 to repair the undercarriage of his Pacifica. Defendant FCA (its predecessor) promptly denied Mr. Morales' claim for reimbursement citing that it was an "out-of-warranty consideration." At the time of repair, Mr. Morales' Pacifica had 149,000 miles. (Id. at 53.)

None of the Plaintiffs' vehicles were manufactured within the six-week window identified by FCA in the March 16, 2012 TSB; none were included in the extended warranty group; and, none received an extended warranty letter. However, Plaintiffs allege that "throughout the United States, owners of over 322,000 Pacificas, model years 2004-2008, have been discovering that their vehicles' engine cradles are severely rusted and corroded, many to the point that their vehicles have been deemed unsafe to drive," and "have been forced to either stop using their Pacificas of pay for repairs out of pocket, while others are currently driving their vehicles unaware of the alleged hazard." (Id. at 25-26.) Plaintiffs claim FCA was aware of the alleged defect and, that despite that knowledge, fraudulently withheld information about the defect, fraudulently denied the existence of the defect and failed to adequately address the engine cradle defect. (Id. at 36.)[1]

---

[1]

On April 20, 2015, FCA filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint. (Docket #17.) At the Status Conference held on June 26, 2015, the Parties indicated that said Motion was moot. (Docket #29.) On April 20, 2015, FCA also filed a Motion for Summary Judgment. (Docket #18.) FCA asserted that it was entitled to summary judgment pursuant to Fed. R. Civ. P. 56(c) on all claims in Plaintiffs' First Amended Class Action Complaint.

FCA filed its Motion for Judgment on the Pleadings on September 17, 2015, arguing

primarily that FCA had no legal duty to warn Plaintiffs of the alleged defect in their vehicles as

there is no relationship between FCA and any of the Plaintiffs which would trigger a duty to

warn.  (Docket #39.)  On October 15, 2015, Plaintiffs filed their Response in Opposition to

Defendant's Motion for Judgment on the Pleadings.  (Docket #42.)  Plaintiffs assert that FCA

had an independent duty to warn of and adequately address the alleged engine cradle defect in

Plaintiffs' vehicles.  Plaintiffs state that FCA had actual knowledge of the defect; disseminated

confusing and false information about the defect; and, that FCA then cherry-picked 7,000

defective vehicles manufactured to repair for free while ignoring the defect in over 300,000

vehicles.  On October 30, 2015, FCA filed its Reply in Support of its Motion for Judgment on

the Pleadings.  (Docket #43.)

### Discussion

The Sixth Circuit reviews motions for judgment on the pleadings under Fed. R. Civ. P.

---

On June 2, 2015, FCA filed a Motion to Transfer.  (Docket #24.)  FCA arguing
that the case should be transferred, pursuant to 28 U.S.C. § 1412, to the Southern District
of New York, for referral to the Bankruptcy Court in that District, because the claims
made by Plaintiffs are dependent on, and inextricably intertwined with, the *In re Old
Carco LLC* Sale Order.  The Bankruptcy Court retained jurisdiction to interpret and
enforce the Sale Order and, citing *Ritter v. Chrysler Group LLC*, 2013 WL 7175621, *3
(M.D. Pa. 2013), FCA argued that transfer would serve the interests of justice and permit
the Bankruptcy Court to interpret and enforce its Sale Order, thereby ensuring uniformity.

On September 3, 2015, the Court denied FCA's Motion to Dismiss as moot;
denied FCA's Motion for Summary Judgment as premature; and, denied FCA's Motion
to Transfer in light of the fact that Plaintiffs in this case have indicated they are not
proceeding under a theory of successor liability, but rather asserting that "FCA
established a sufficient relationship with pre-Bankruptcy Pacifica owners such that State
law imposed and independent duty to address the engine cradle defect." (Docket #35.)

12(c) under the de novo standard applicable to motions to dismiss under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 n. 1 (6th Cir. 1988). Correspondingly, the standard of review used by a district court to rule on a motion for judgment on the pleadings is the same as the standard used to rule on Rule 12(b)(6) motions. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a

-6-

complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of

the complaint, although matters of public record, orders, items appearing in the record of the

case, and exhibits attached to the complaint may also be taken into account. *See Amini v.*

*Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the

instant Motion must be decided.

## Discussion

In *Burton v. Chrysler Group LLC*, 492 B.R. 392 (S.D.N.Y. 2013), the Bankruptcy Court

stated as follows:

> Nevertheless, the law may impose a separate duty to warn on New Chrysler.
> Here, New Chrysler purchased Old Carco's assets. **Succession alone does not**
> **impose a duty to warn a predecessor's customers of pre-existing defects**,
> *Florom v. Elliott Mfg.*, 867 F.2d 570, 577 (10th Cir. 1989); *Travis v. Harris*
> *Corp.*, 565 F.2d 443, 448-49 (7th Cir. 1977), but the duty may arise where the
> successor (1) succeeds to the predecessor's service contracts that cover the
> particular machine, (2) actually services the machine, (3) is aware of the defect
> and (4) knows the location of the machine's owner. *Florom*, 867 F.2d at 577;
> *Polius v. Clark Equip. Co.*, 802 F.2d 75, 84 (3d Cir. 1986); *Travis*, 565 F.2d at
> 449; *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 451 N.E.2d 195, 199,
> 464 N.Y.S.2d 437 (N.Y. 1983); RESTATEMENT (THIRD) OF TORTS § 13
> cmt. b (1998). **In these circumstances, the law imposes a duty to warn**
> **because the successor has entered into a relationship with the customer and**
> **derives an actual or potential economic benefit. *Schumacher*, 451 N.E.2d at**
> **199.**

*Burton*, 492 B.R. at 405. (Emphasis added.) The Court went on to state, with regard to vehicles

manufactured prior to the Sale Order:

> [T]he Sale Order . . . did not prevent New Chrysler from voluntarily assuming
> obligations that it did not have, such as extending a lifetime warranty to repair or
> replace a defective fuel assembly. I do not opine on the scope of the duties that
> New Chrysler assumed when it issued the TSBs or the legal sufficiency of these
> claims under non-bankruptcy law except to note that they would not be barred by
> the Sale Order.

*Id.* at 406.

The TSBs issued by FCA to dealerships regarding the alleged rust and corrosion did not trigger a duty on the party of FCA to pay for Plaintiffs' vehicle repairs. *Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 985-86 (N.D. Ohio 2013). Further, while the TSB may serve as evidence that FCA had knowledge of the potential existence of rust and corrosion on 2004-2005 Pacificas, knowledge alone is insufficient to establish a duty on the part of FCA to warn Plaintiffs that their vehicles may be affected. Plaintiffs must allege a relationship between FCA and Plaintiffs that gave rise to a duty to warn. *Burton*, 492 B.R. at 395-96, 401-02, and 404-05.

In this case, FCA took a voluntary action, extending the warranty on select model-year 2004-05 Pacifica vehicles manufactured in the salt belt states during a specific 6-week window. Plaintiffs vehicles were not included. The scope of a duty voluntarily undertaken is limited to that actually undertaken. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1163 (Ill. 2011). Plaintiffs have failed to allege a relationship with FCA which would created a duty on the part of FCA to warn Plaintiffs of the alleged defect or pay for repairs. Accordingly, all of Plaintiffs' claims fail as a matter of law.[2]

### Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings filed by Defendant, FCA US, (Docket #39) is hereby GRANTED.

---

[2]

   Plaintiffs argue that FCA fraudulently withheld information about the alleged defect and/or fraudulently denied the existence of the alleged defect. Where a plaintiff alleges fraud by concealment or omission, the plaintiff "must also allege an underlying duty to speak for the nondisclosure to be actionable." *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 822 (N.D. Ohio 2006). As stated above, Plaintiffs have failed to allege a relationship with FCA which would trigger a duty to warn.

This case is hereby terminated.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: November 16, 2015